SCHARF BROS. CO., INC. v. UNITED STATES

No. 4885.—Invoices dated Pontefract, England, November 13, 1935, etc.
  Certified November 14, 1935, etc.
  Entered at New York November 27, 1935, etc.
  Entry No. 766089, etc.

## First Division, Appellate Term

(Decided April 22, 1940)

*Barnes, Richardson & Colburn* (*Samuel M. Richardson* of counsel) for the appellant.

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster* and *Richard F. Weeks*, special attorneys), for the appellee.

Before BROWN and KEEFE, Judges

BROWN, Judge: This case comes before us on application of the importer for review of the decision and judgment of Judge Evans, sitting as single judge in Reap. Dec. 4633 on remand affirming his original decision and judgment in Reap. Dec. 4420, wherein the appraiser was sustained in his valuation of the merchandise involved on the basis of foreign value of what he considered comparable merchandise.

The importer contended for valuation on the basis of United States value on the ground that the imported merchandise was a special article made on contract for the importer and not sold in England, the country of export, and that, therefore, there was no comparable merchandise and hence no foreign or export value could be found.

The merchandise involved consists of two kinds of candy, viz:

Licorice cakes, designated Mayfair Licorice Cakes, and Mixed Candies, designated Mayfair All sorts.

The facts as established by the record in Reap. Dec. 4420 are as follows:

Lou Scharf testified for the plaintiff that he was an officer of the importing corporation and was sales manager and that included among his duties was the purchase of merchandise from foreign countries; that in 1934 he visited Dunhill's Inc., manufacturers of candy, and entered into negotiations with the owner, Frank Godson, for the purchase of candy. He considered the prices of samples shown him as too high for importation into the United States and suggested to Mr. Godson the price might be lowered by manipulation of the candies such as

were sold in England. Mr. Godson told him that a lower priced product could be obtained by the use of inferior, less expensive material than used in the product sold in England. This was agreed to and an oral contract entered into to supply Scharf Bros. Co., Inc., the importers herein, candy made of cheaper materials at the lower price thus made possible. The two kinds of candy selected for the deterioration were what was sold in England as Tower Brand Liquorice Cakes or Spanish Buttons, and Tower Brand All Sorts. The result of this deterioration was the candies here imported under the name of Mayfair Licorice Cakes and Mayfair All Sorts. It was testified that as to the Mayfair All Sorts the deterioration from the Tower Brand All Sorts consisted for the most part in omitting from the mixture the most expensive varieties, viz, those containing cocoanut or glycerine, although as to the remainder it was testified that inferior cheaper ingredients were used.

We quote from the testimony of Lou Scharf, importer's witness, as follows:

X Q. Will you tell us what the other materials in the Spanish Buttons are?— A. Contains more gelatine.

X Q. More gelatine?—A. That is right.

X Q. Any other differences?—A. That in itself is sufficient, that is the most expensive item.

Mr. WEEKS. I move to strike that out.

\* \* \* \* \* \* \*

X Q. Is there any other difference in the component parts so far as the other materials?—A. Yes, the licorices are different.

X Q. And how does the amount of licorice in the Spanish Buttons compare with the amount of licorice in the "Mayfair Cakes", if you know?—A. The two products that are used for the manufacture, one made in Smyrna, and the other is a United States product, a product made in the United States, is a prepared product.

X Q. It is not a question of how much it contains. It is a question in the difference of the licorice itself.—A. It is not a question of how much it contains. It is a question in the difference of the licorice itself, yes. (Rec. pp. 24, 25.)

\* \* \* \* \* \* \*

Q. (By Mr. Richardson) What is the difference between these two types?— A. "Dunhill's All Sorts" is a much higher quality mixture, contains more gelatine filled pieces.

Q. What does "All Sorts" mean in the candy trade?—A. A mixture of all kinds, creams and licorice filled, a mixture of various shapes and colors.

Q. Have you seen the type of merchandise manufactured by Dunhills in the brand called "Tower Brand"?—A. Yes.

Q. Is that an "All Sorts" candy too?—A. Yes, that is an "All Sorts" candy too.

Q. Do you know how many types of different pieces of candy are represented in the different kinds of candy, represented in the "Tower Brand All Sorts"?— A. About fifteen.

Q. And how many different types of candy are represented in the "Mayfair All Sorts"?—A. Seven.

Q. Can you state from your knowledge what the difference, how the ones that are not in the "Mayfair All Sorts" differ from the ones that are included in the

"Tower Brand All Sorts"?—A. Cocoanut coated pieces that are in the "Tower Brand All Sorts", and the soft gelatine pieces that are in the "Tower All Sorts" are left out of the "Mayfair All Sorts", with the exception of one piece which is included. "Tower All Sorts" is a different sort of cocoanut piece, not in the Mayfair mixture.

Q. Can you state from your knowledge of the candy business whether these candies, including cocoanuts are more or less expensive?—A. The cocoanut is a more expensive ingredient than sugar or licorice. The amount of glycerine contained is very small in its cost per hundred pounds, but where these things are measured, cocoanut would be one of the predominantly expensive materials used. (Rec. pp. 19, 20.)

\* \* \* \* \* \* \*

Q. Would that, with the inclusion of the cocoanut component, make the "Tower Brand" more or less expensive?—A. More expensive.

Q. Can you estimate from your knowledge of the candy business about what the difference would be?

\* \* \* \* \* \* \*

The Witness. Yes I can, the extent of the cocoanut used in the "Tower" mixture as compared with the "Mayfair" mixture would make a differential of \* \* \* 14 to 15 pounds of cocoanut per hundred pounds of candy.

Judge Evans. That much more in the Tower, or All Sorts?

The Witness. In the "Tower All Sorts".

\* \* \* \* \* \* \*

Q. (By Mr. Richardson.) And how about the difference in value?—A. That of course would bring up the value of the "Tower All Sorts" considerably, making a differential of $1.00 to $1.10 per hundred pounds. (Rec. pp. 20, 21.)

This same witness also testified that the "Tower All Sorts" as sold in England was packed in 7 pound boxes trimmed with lace paper and the boxes covered with printed labels describing the merchandise, done in colors, whereas the imported "Mayfair All Sorts" was packed in rough wooden boxes containing 14 pounds each.

There was received in evidence on behalf of the importer an affidavit (Exhibit 1) sworn to by Mr. Frank Godson, Managing Director of Dunhill's Ltd., the manufacturer of the imported "Mayfair" candies here involved as well as of the "Tower Brand" candies considered by the appraiser as comparable merchandise. This affidavit corroborates the testimony of Mr. Lou Scharf as outlined above except as to number of different types of assorted confectionery.

The affidavit states that—

There are fourteen different kinds included in the Tower brand and only eight different kinds are included in the Mayfair. The six kinds not included in the Mayfair are of more expensive character and are substituted by cheaper types, namely the black liquorice pieces.

The affidavit also states that the Mayfair brand both of the licorice cakes and the all sorts are not sold in England or anywhere else except to Scharf Bros. Co., Inc., in the United States, and that the Mayfair brand would not be accepted for the Tower brand in Great Britain.

In rebuttal the Government introduced in evidence three reports, Exhibits 5 (with samples 5A, 5B and 5C), 6, and 7, of Special Agent Ronald N. Marquis which tend to diminish the differences testified to by Mr. Lou Scharf, witness for the importer, and sworn to in the affidavit of Mr. Frank Godson (Exhibit 1).

These reports go into considerable detail as to the ingredients of the Tower brands and the Mayfair brands indicating that both the quantity and cost of the ingredients used in the Tower brands and in the Mayfair brands differ so very little as to leave the two brands comparable.

As to the Licorice Cakes: in the absence in the importer's testimony of other than general statements that the licorice used in the imported Mayfair brand was different and inferior to that used in the Tower brand (Spanish Buttons) and that the glycerine content was less in the Mayfair brand, the special agent's report must be taken as showing that the difference between the Tower brand licorice cakes and the Mayfair licorice cakes is so small as to leave the two brands of licorice cakes comparable merchandise, and we so hold and thereby affirm the findings of Judge Evans below and his judgment sustaining the appraiser in valuing the Mayfair licorice cakes at the foreign value of the comparable Tower brand licorice cakes.

As to the All Sorts: whereas the special agent's reports would seem to reduce the differences in some of the ingredients of the Tower All Sorts and the Mayfair All Sorts, the reports admit, as the importer contends, that the Mayfair All Sorts as imported contains but 8 varieties of candy as against 14 varieties in the Tower All Sorts as sold in England. This, of itself, constitutes such a material difference as to remove the Tower brand as comparable merchandise to Mayfair All Sorts and we should so hold had the samples in evidence upheld the other testimony. However, an examination of the Exhibit 4 representing the Mayfair All Sorts as imported reveals that there are 10 different varieties of candy, including two of cocoanut-covered pieces, and not only 8 varieties with the cocoanut pieces omitted. An examination of Exhibit 5A representing the Tower Brand All Sorts reveals the same 10 varieties as in the Mayfair sample.

As the importer's main contention was that the lesser number varieties in the imported Mayfair All Sorts constituted a different noncomparable entity together with the lesser cost of the imported article due to the omission of the higher cost cocoanut pieces, which the samples show were not omitted, we are constrained to affirm the findings of Judge Evans below that the imported Mayfair All Sorts and the Tower All Sorts are comparable and affirm his judgment sustaining the appraiser's valuation of the imported Mayfair All Sorts at the foreign value of the comparable Tower All Sorts.

Judgment will issue accordingly.